

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD–0899–18

**PATRICK JORDAN, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### BOWIE COUNTY

KEEL, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, NEWELL, WALKER, and SLAUGHTER, JJ., joined. KEASLER, J., filed a dissenting opinion. YEARY, J., filed a dissenting opinion in which KELLER, P.J., joined.

### O P I N I O N

A jury convicted Appellant of deadly conduct and sentenced him to four years in prison. He claims the trial court erred in denying him a jury instruction on self-defense against multiple assailants. The court of appeals concluded that Appellant was not entitled to a self-defense instruction at all, and the failure to include multiple assailants language was not error. *Jordan v. State*, 558 S.W.3d 173, 181 (Tex. App.—Texarkana

2018). We disagree and hold that Appellant was entitled to a jury instruction on multiple assailants, and the failure to include it was harmful. We remand the case to the trial court for further proceedings.

## I. Self-Defense

### A. Definition

A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. TEX. PENAL CODE § 9.31(a). A person is justified in using deadly force against another if he would be justified in using force, and he reasonably believes deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE § 9.32(a). The evidence does not have to show that the victim was actually using or attempting to use unlawful deadly force because a person has the right to defend himself from apparent danger as he reasonably apprehends it. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).

Self-defense is a confession-and-avoidance defense requiring the defendant to admit to his otherwise illegal conduct. *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010). He cannot both invoke self-defense and flatly deny the charged conduct. *Id.* at 406 (confession-and-avoidance requirements satisfied despite Juarez's inconsistent testimony alternatively admitting to the conduct and claiming it was an accident).

## B.  Raising Self-Defense Against Multiple Assailants

Regardless of the strength or credibility of the evidence, a defendant is entitled to an instruction on any defensive issue that is raised by the evidence.  *Hamel*, 916 S.W.2d at 493.  A defensive issue is raised by the evidence if there is sufficient evidence to support a rational jury finding as to each element of the defense.  *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).  We view the evidence in the light most favorable to the defendant's requested defensive instruction.  *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017) (citing *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006)).  A trial court errs to refuse a self-defense instruction if there is some evidence, viewed in the light most favorable to the defendant, that will support its elements.  *Gamino*, 537 S.W.3d at 510.

When the evidence viewed from the defendant's standpoint shows an attack or threatened attack by more than one assailant, the defendant is entitled to a multiple assailants instruction.  *Frank v. State*, 688 S.W.2d 863, 868 (Tex. Crim. App. 1985).  The issue may be raised even as to those who are not themselves aggressors as long as they seem to be in any way encouraging, aiding, or advising the aggressor.  *Black v. State*, 145 S.W. 944, 947 (Tex. Crim. App. 1912); *see also Petty v. State*, 70 S.W.2d 718, 719 (Tex. Crim. App. 1934) (evidence viewed from defendant's standpoint showed danger of attack or threatened attack by more than one assailant, and the jury should have been instructed that he had the right to defend against either or all of them); *Cartwright v. State*, 16 Tex.

Ct. App. 473, 487–88 (1884) (error for the jury charge to restrict self-defense to the victim when evidence showed that two others appeared to be acting with the victim).

In *Sanders v. State*, 632 S.W.2d 346 (Tex. Crim. App. 1982), Sanders was hit in the head with a pool cue and chased into the parking lot by several men who were yelling racial epithets at him. He fired three shots in their direction, killing one of them. *Id.* at 346. Sanders was entitled to a multiple assailants instruction even though the deceased had not personally attacked him. *Id.* at 348. Thus, "multiple assailants" does not require evidence that each person defended against was an aggressor in his own right; it requires evidence that the defendant had a reasonable fear of serious bodily injury from a group of people acting together.

## C. Background

Appellant had packed up his belongings to move from Texarkana to Broken Bow, Oklahoma. On the way out of town, he and his friend, Cody Bryan, stopped at the Silver Star restaurant where Appellant's ex-girlfriend, Summer Varley, worked as a waitress. He texted her to see if she was working that evening, and she answered that she was not. She said she was in the bar drinking with some friends and suggested that Appellant buy her a drink. Varley's drinking companions were Jordan Royal, Austin Crumpton, Damon Prichard, and Joshua Stevenson.

When Appellant and Bryan arrived at Silver Star, Royal met them at the door, squeezed Appellant's hand "pretty intently," and told Appellant not to speak to Varley.

Royal was much larger than Appellant, and Appellant found him to be intimidating. Appellant assured Royal they were just there to eat and were not planning to talk to Varley. Since Varley and her friends were in the bar, Appellant and Bryan sat in the main dining area. Nevertheless, Prichard approached their table "with a pretty aggressive nature" and exchanged words with them. Bryan noticed that Prichard exhibited signs of intoxication. Varley approached them, too, and called Appellant an "asshole." After these interactions, Appellant and Bryan thought "it would be a bad idea to stick around too long" and decided to pay their tab and leave quickly rather than eat at Silver Star.

When Appellant and Bryan exited the restaurant, they found Varley, Royal, Prichard, Stevenson, and Crumpton congregated near the door. According to Varley, Royal was intoxicated and upset at Appellant. She knew that Royal was going to try to attack Appellant and, concerned for Appellant's safety, Varley approached him and told him he needed to leave. Crumpton testified that the group was "mouthing" at Appellant and Bryan; Prichard testified that there was an "altercation, a bunch of talking mess, and then it escalated." According to Prichard, the group moved into the parking lot because "it was heated at the moment."

As Appellant and Bryan tried to walk to their car, Royal punched Bryan, knocking him out. Appellant saw Royal, Crumpton, and Prichard standing over Bryan and saw Royal motion for Stevenson to go around the cars to chase Appellant down. Appellant continued to retreat with Royal and Stevenson in pursuit of him. Crumpton and Varley

also followed Royal into the parking lot.  Varley testified that "everyone was going after [Appellant]" and agreed that there were multiple assailants on Appellant and Bryan.

Appellant said a hand reached around his face, "fish-hooked" his eye, and turned him around.  He realized it was Royal who was grabbing him and on top of him, and he heard footsteps coming up from behind him.  As Appellant and Royal were wrestling, Appellant pulled a pistol out of his pocket, chambered a round, and fired three shots.  He testified that he did so because he feared for his and Bryan's safety, they were being mobbed by multiple assailants, and he had no other alternative because he had already tried to retreat.  One shot hit a parked car, one hit Royal in the leg, and one hit Varley in the chest.

Appellant went back into the restaurant, asked the staff to call 9-1-1, placed the pistol on the counter in the kitchen, held his hands up, and waited for police to arrive.  He admitted to the officers that he had fired the gun.

Appellant was charged with aggravated assault with a deadly weapon for shooting Royal and deadly conduct for knowingly discharging a firearm in the direction of Varley and Crumpton.  TEX. PENAL CODE §§ 22.02, 22.05(b).  The jury charge included self-defense instructions for both offenses based on the conduct of Royal, but the trial judge declined to include Appellant's requested self-defense instruction related to the conduct of Royal "or others with him."  The jury found Appellant guilty of deadly conduct but hung on aggravated assault.

## D. Self-Defense Against Multiple Assailants Was Raised

In the light most favorable to the verdict, the evidence showed that five people who were united in their hostile intent acted together to intimidate and chase Appellant and Bryan. Right before firing the gun, Appellant heard Royal hit Bryan. When he turned around, he saw Royal, Crumpton, and Prichard standing over an unconscious Bryan, and saw Royal motion for Stevenson to chase Appellant as he was trying to flee. Varley and Crumpton followed. Royal, who was bigger than Appellant, grabbed him by the eye socket, and jumped on top of him. While he was wrestling with Royal, Appellant heard approaching footsteps, and he fired because he felt he had no other choice. On this evidence a rational jury could have found that Appellant reasonably believed that deadly force was immediately necessary to protect himself from the group's apparent or attempted use of deadly force against himself and Bryan.

It does not matter whether Crumpton or Varley individually used deadly force against Appellant; it matters whether Appellant had a reasonable apprehension of actual or apparent danger from a group of assailants that included Crumpton and Varley. "If there is evidence of more assailants than one, the charge must inform the jury that the accused can defend against either, and it is error to require the jury to believe or find that there was more than one assailant attacking the accused." *Black*, 145 S.W. at 947; *see also Dickey v. State*, 22 S.W.3d 490, 493 (Tex. Crim. App. 1999) (Keller, J., concurring) ("[W]hen . . . an attack is being conducted by multiple people as a group, a defendant is

justified in using force against any member of the group, even if the recipient of that force is not engaging in conduct that would, by itself, justify the use of force (or deadly force as the case may be).").

The State Prosecuting Attorney as *amicus curiae* argues that Appellant did not satisfy the confession-and-avoidance requirement for self-defense because he did not admit to knowingly shooting in the direction of Crumpton and Varley. The State took a different position at trial, maintaining that Appellant admitted to all of the elements of deadly conduct on cross examination:

| State: | "That you did then and there knowingly discharge your firearm?" |
|---|---|
| Appellant: | "Yes, sir" |

***

| State: | "You fired your weapon in the direction of one or more individuals. Is that correct, sir?" |
|---|---|
| Appellant: | "Yes, sir." |
| State: | "Those are all the elements that the State has to prove to deadly conduct." |

The State Prosecuting Attorney also argues that Section 9.31 requires evidence that the victim was an assailant in his own right because self-defense is couched in terms of using force against "another" and against "the other's" use or attempted use of unlawful force and because self-defense is based on reciprocity. But Section 9.31 encompasses "others" because "another" is defined by the Penal Code, and Penal Code definitions apply to grammatical variations of the defined terms. TEX. PENAL CODE § 1.07(a)(5) (definition of "another"), (b) (grammatical variations apply to defined terms). And self-

defense is based on reasonableness. TEX. PENAL CODE §§ 9.31(a), 9.32(a)(2).

The State Prosecuting Attorney maintains that the trial court's instructions gave Appellant what he wanted: the right to defend against Varley and Crumpton because of Royal's actions. But the instructions focused exclusively on Royal's actions whereas the evidence viewed in the light most favorable to Appellant showed that he was facing a mob. This "unduly limited the jury in passing upon appellant's right of self-defense." *See McCuin v. State*, 505 S.W.2d 831, 832 (Tex. Crim. App. 1974).

Since the evidence demonstrated that Appellant had a reasonable apprehension of apparent danger from multiple assailants, he was entitled to the instruction.

## II. Should We Reach the Harm Issue?

The court of appeals did not address harm because it found no error. Ordinarily we would not reach an issue that the court of appeals did not address; but if the resolution of the issue is "clear" or "plain," then judicial economy justifies this Court in reaching the issue in the first instance. *See Davison v. State*, 405 S.W.3d 682, 691–92 (Tex. Crim. App. 2013) (correct resolution of harm analysis was "clear," so judicial economy justified this Court in addressing it rather than remanding to the court of appeals); (*Johnston v. State*, 145 S.W.3d 215, 224 (Tex. Crim. App. 2004) ("plainly harmless" error could be reviewed in first instance by this Court). As discussed below, the harmfulness of the trial court's refusal to instruct on multiple assailants was clear. Furthermore, both parties addressed harm in briefing before this Court. Thus, for the sake of judicial economy we

address harm even though the court of appeals did not.

### III.  Jury Charge Error Harm Standard

The standard of review for jury charge error depends on whether the error was preserved.  *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  If it was not, then it is reversible only if it caused "egregious harm."  *Id.*  If error was preserved, it is reversible if it caused "some harm."  *Id.*

### A.  Was Error Preserved?

The district attorney maintains that error was not preserved because Appellant's proposed written charge referenced multiple assailants with respect to defense of a third person but not with respect to self-defense.  But at the charge conference the prosecution explained the defense request to the judge in terms of both self-defense and defense of a third person, saying Appellant "wants this section regarding self-defense and defense of others in there to include Jordan Royal or others.  So his argument is that it needs to say 'Jordan Royal or others.'"  The trial court thus understood the defense request to apply to both self-defense and defense of a third person, and error was preserved.  *See Francis v. State*, 36 S.W.3d 121, 123 (Tex. Crim. App. 2000) (charge error preserved if trial court understood request).  Consequently, we must review the error here for "some harm."  *Almanza*, 686 S.W.2d at 171.

### B.  "Some Harm" Evaluation

"Some harm" means actual harm and not merely a theoretical complaint.  *Cornet v.*

*State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013); *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012). Reversal is required if the error was calculated to injure the rights of the defendant. *Cornet*, 417 S.W.3d at 449 (quoting *Almanza*, 686 S.W.2d at 171).

To assess harm, we must evaluate the whole record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel, and other relevant information. *See Cornet*, 417 S.W.3d at 450; *Almanza*, 686 S.W.2d at 171. The record in this case demonstrates some harm because the only contested issue was self-defense, and the failure of the self-defense instructions to reference "Royal or others" made rejection of the defense inevitable.

The deadly conduct application paragraph instructed the jury to find Appellant guilty if he knowingly shot in the direction of Varley and Crumpton, conduct that he admitted at trial.[1] But the self-defense application paragraph authorized an acquittal for that conduct only if Appellant reasonably believed it was immediately necessary to shoot

---

[1]The deadly conduct application paragraph read as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about September 23, 2015, in Bowie County, Texas, the defendant, PATRICK JORDAN, did then and there, knowingly discharge a firearm at or in the direction of individuals, namely Summer Varley and Austin Crumpton, then you will find the defendant guilty of deadly conduct, as charged in the indictment.

Royal.[2]  Since a need to shoot at Royal alone would never justify also shooting at Varley

and Crumpton, the instruction mandated a rejection of self-defense.  Similarly, the self-

defense reverse application paragraph specified that self-defense had to be rejected if

Appellant did not reasonably believe that shooting at Varley and Crumpton was

immediately necessary to protect himself against Royal.[3]  Since shooting at Varley and

Crumpton would never be necessary to defend against Royal alone, this instruction also

---

[2]The self-defense application paragraph read as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, PATRICK JORDAN, did commit the offense of deadly conduct, as alleged in the indictment, but you further find from the evidence, as viewed from the standpoint of the defendant at the time that from the words or conduct, or both, of Jordan Royal it reasonably appeared to the defendant that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Jordan Royal, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Jordan Royal's use or attempted use of unlawful deadly force, he shot Jordan Royal with a gun, and that a reasonable person in the defendant's situation would not have retreated, then you should acquit the defendant on the grounds of self-defense on said occasion and under the circumstances, then [sic] you should give the defendant the benefit of that doubt and say by your verdict of [sic] not guilty of Deadly Conduct.

[3]The self-defense reverse application paragraph read as follows:

> If you find from the evidence beyond a reasonable doubt that at the time and place in question the defendant did not reasonably believe that he was in danger of death or serious bodily injury, or that a reasonable person in the defendant's situation at the time and place in question would have retreated before using deadly force against Jordan Royal, or that the defendant, under the circumstances as viewed from his standpoint at the time, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against Jordan Royal's use or attempted use of unlawful deadly force, then you should find against the defendant on the issue of self-defense.

mandated a rejection of self-defense.

By contrast, correct instructions would have authorized an acquittal if Appellant reasonably believed that shooting in the direction of Varley and Crumpton had been immediately necessary to protect himself against "Royal or others" and would have required rejection of self-defense if Appellant did not reasonably believe that shooting at Varley and Crumpton was immediately necessary to protect himself against deadly force by "Royal or others." The difference between the instructions that were given and those that should have been given is the difference between foreclosing self-defense and allowing fair consideration of it. That difference clearly demonstrates that Appellant was harmed by the refusal to instruct on multiple assailants. Thus it is unnecessary to further assess harm in relation to other charge errors such as: the failure to put the burden of persuasion on the State with respect to self-defense, the failure to instruct on the presumption of reasonableness with respect to a defendant's belief that deadly force is immediately necessary, and conditioning self-defense on the duty to retreat. TEX. PENAL CODE §§ 2.03(d), 9.32 (b)–(d).

### III. Conclusion

Appellant was entitled to a self-defense instruction that referenced "Royal or others." The failure to give it was calculated to injure Appellant's rights. We reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings consistent with this opinion.

Delivered: February 5, 2020
Publish