In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00099-CR
_____

GARY MOTTER II, Appellant

v.

THE STATE OF TEXAS, Appellee

On Appeal from the 411th District Court
San Jacinto County, Texas
Trial Cause No. CR12,645

MEMORANDUM OPINION

Gary Motter II ("Motter") appeals his convictions for aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B). In two issues, Motter complains that the trial court improperly denied his request to remove instructions on the law of aggravated sexual assault of a child and that the State engaged in improper closing argument to the jury that prejudiced him. As discussed more fully below, we affirm the trial court's judgment.

1

## Background

In August 2018, a San Jacinto County grand jury indicted Motter for two counts of aggravated sexual assault of a child, first degree felonies. *See id.* § 22.021(e). Specifically, in count one, Motter was charged with intentionally and knowingly causing the penetration of the anus of his stepdaughter, Helen.[1] In count two, Motter was charged with intentionally and knowingly causing the penetration of the mouth of Helen. At his jury trial, the State presented seven witnesses including Patricia Schofield, the SANE nurse that examined Helen; Omar Sheikh, a detective with the San Jacinto County Sheriff's Office; Amy McCorkle, an investigator with the Montgomery County District Attorney's Office; Kaitlyn Gomez, a forensic interviewer with Children's Safe Harbor; Shauna Joseph, a forensic scientist with the Texas Department of Public Safety Crime Lab; Mother, Helen's mother and Motter's ex-wife; and Helen, the victim. The defense presented five witnesses including Charles Hammersla, Motter's friend; Nancy Freeze, Motter's grandmother; James Lumpkin, Jr., a friend and former housemate of Motter and his ex-wife; Dawn Woods, the mother of Motter's young daughter; and Dr. Kit

---

[1]We refer to the crime victim by pseudonym, and we refer to their family members by their relationship to the victim to protect the victim's privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's identity and privacy throughout the criminal justice process").

2

Harrison, a licensed psychologist. The jury returned a verdict of guilty as to both counts of aggravated sexual assault of a child.

Four months later, the punishment hearing was held. At the punishment hearing, the State presented three witnesses. The witnesses were Mother, Helen, and Jessica Gailey, a woman who alleges Motter raped her in Arkansas. The defense presented five witnesses including Nancy Freese, Motter's grandmother; Threasa King, Motter's aunt; Toni Sinclair, Motter's great uncle; Dystinie Johnson, Motter's niece; and Dawn Woods, the mother of Motter's young daughter. At the conclusion of the punishment hearing, the trial judge sentenced Motter to forty years in prison. This appeal followed.

**Analysis**

In his first issue, Motter argues that language in the jury charge regarding the law of aggravated sexual assault of a child should have been removed or simplified. We review a claim of alleged jury charge error using a two-step process in which we examine (1) whether error existed in the charge and (2) whether sufficient harm resulted from the error to require reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (en banc). Here, Motter properly objected to the charge at trial, and therefore a jury charge error requires reversal if we find "some harm" to his rights. *See id.* at 743 (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). The

3

*Almanza* standard requires that an appellant show actual, and not theoretical, harm from jury instruction error. *Ngo*, 175 S.W.3d at 750; *see also Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013).

Motter argues that he was harmed by the trial judge's denial of his request to remove a portion of the recitation of the relevant statute. The jury charge stated:

> *A person commits an aggravated sexual assault of a child, regardless of whether the person knows the age of the child at the time of the offense, if the person intentionally or knowingly causes the penetration of the anus of a child by any means when the victim was then and there younger than 14 years of age.*
>
> *A person commits an aggravated sexual assault of a child, regardless of whether the person knows the age of the child at the time of the offense, if the person intentionally or knowingly causes the penetration of the mouth of a child by any means when the victim was then and there younger than 14 years of age.*
>
> To prove that the defendant is guilty of aggravated sexual assault of a child, as alleged in Count I of the indictment, the state must prove, beyond a reasonable doubt, two elements. The elements are that—
>
> 1. the defendant intentionally or knowingly caused the penetration of the anus of [Helen] with the defendant's sexual organ; and
> 2. [Helen] was at the time a child younger than fourteen years ago.
>
> To prove that the defendant is guilty of aggravated sexual assault of a child, as alleged in Count II of the indictment, the state must prove, beyond a reasonable doubt, two elements. The elements are that—
>
> 1. the defendant intentionally or knowingly caused the penetration of the mouth of [Helen] with the defendant's sexual organ; and

4

2. [Helen] was at the time a child younger than fourteen years ago.

With regard to element 2, it does not matter whether the defendant knew the child was younger than fourteen years old at the time of the offense.

Motter argues that the italicized paragraphs were cumulative and are "almost a comment on the weight of the evidence in favor of the State." Motter argues that the italicized paragraphs go beyond defining the relevant statutes to the jury and tend to mislead the jury.

Generally, a jury charge that tracks the language of the relevant statute is sufficient and therefore not erroneous. *See Casey v. State*, 215 S.W.3d 870, 886–87 (Tex. Crim. App. 2007); *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996); *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994) ("A jury charge which tracks the language of a particular statute is a proper charge on the statutory issue."). The court in *Casey* concluded that the trial court did not comment on the weight of the evidence because "the jury charge tracked the language of the statute." *Casey*, 215 S.W.3d at 886–87. "The purpose of the jury charge, of course, is to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (internal quotations omitted) (citations omitted).

Article 36.14 of the Code of Criminal Procedure requires that a trial court provide a jury charge "distinctly setting forth the law applicable to the case[.]" Tex.

5

Code Crim. Proc. Ann. art. 36.14. Here, the charge sets forth the law applicable to the case by tracking the language of the statute. *See Casey*, 215 S.W.3d at 886-87. "Following the law as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge." *Martinez*, 924 S.W.2d at 699 (citation omitted). We overrule Motter's first issue.

Next, Motter argues that the State engaged in improper jury argument during closing arguments that prejudiced the Defendant. According to Motter, the State instructed the jury that in order to acquit Motter, the jury would have to determine that Helen "was a liar" instead of instructing the jury that they would need to determine whether the State had proven all of the elements of the charged offenses. Motter argues that the State's comment improperly shifted the burden to Motter, and the trial judge failed to instruct the jury to disregard the improper argument. Motter further argues that the State's argument improperly bolstered the testimony of Helen and Mother and improperly instructed the jury on what it had to decide.

The transcript from the trial proves that during the State's closing arguments, the following exchange occurred:

> [State]:      Finally, folks, for the defense to be correct – and there is no other way around this – [Helen] has to be a liar. For the defense to be correct, that girl has to be a liar. A liar who –
>
> [Defense]:   Judge, I object. He is reversing the burden of proof and saying that for the defense to be correct – it is the State's burden of proof and beyond a reasonable doubt to show that the allegations in the indictment are true, not for the defense to show anything.

The Court: Okay. The jury will rely on the charge it was given. The evidence that was introduced – the arguments of lawyers are not evidence.

Here, the trial court instructed the jury to rely on the instructions in the jury charge and told the jury that the arguments of lawyers are not evidence. We presume the jury followed the trial court's instruction to disregard the complained-of argument. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (discussing in the context of a limiting instruction). We conclude that the prejudicial effect of the State's argument, if any, "w[as] not so indelible" that the jury would have ignored the trial court's instruction. *See Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011). "The law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury." *Id.* at 741; *see also Adams v. State*, 156 S.W.3d 152, 157 (Tex. App.—Beaumont 2005, no pet.) ("In most instances, the trial court's instruction to disregard cures any harm."). Additionally, the jury charge included a "Presumption of Innocence" section that detailed that "defendant is presumed innocent of the charge" and included a "Burden of Proof" section that detailed that it was the State's burden to prove Motter guilty of the offenses. On this record, we conclude that the State's remark had little, if any, prejudicial effect, and that the measures taken to cure any prejudice were adequate to cure any harm. We overrule issue two.

## Conclusion

Having overruled all Motter's issues, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on January 3, 2025
Opinion Delivered May 14, 2025
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.