

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00383-CR
No. 07-23-00384-CR

---

YOCELIN PEREZ JAIMES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 108th District Court
Potter County, Texas
Trial Court Nos. 081771-E-CR, 081770-E-CR, Honorable Douglas R. Woodburn, Presiding

---

December 31, 2024

OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Is an extra-medium shirt smaller or larger than a medium? Would it make a difference if the person selling the shirt tells the buyer it was either smaller or larger? In the underlying case, the jury charge included the full statutory definitions of "intentionally" and "knowingly" in the abstract portion without tailoring them to the offense of indecency with a child—a nature-of-conduct offense. While the State yields that inclusion of both was error, it asserts the error was harmless.

Following pleas of not guilty, Appellant, Yocelin Perez Jaimes, was convicted by a jury of two counts of indecency with a child. Punishment was assessed at confinement for seven years for each conviction, ordered to be served concurrently. By her original and reply brief, Appellant raises the following three issues:

(1) Did the trial court's charge to the jury cause Appellant "some harm" when over objection by the defense, the charge permitted conviction based on the result or circumstances surrounding the alleged conduct rather than the nature of the alleged conduct?

(2) Were Appellant's substantial rights affected by the trial court's denial of the defense's request to cross-examine the sergeant on why he did not investigate, as a motive for fabrication, the timing of the complainant's outcry when he had been made aware three times of the impending assault trial involving the complainant's sister?

(3) Alternatively to issue two, Appellant contends the trial court violated her Sixth Amendment right to cross-examine the sergeant regarding bias and diminished credibility for his failure to investigate the possibility the complainant fabricated the abuse and the violation contributed to her conviction beyond a reasonable doubt.

We reverse and remand.

## BACKGROUND

Appellant has DACA (Deferred Action for Childhood Arrivals) status. She participated in special education classes and graduated from high school in 2014. A counselor testified that Appellant's primary language is Spanish and although she communicates in English "most of the time," she is not proficient in the language. The counselor added Appellant had the maturity level of a sixteen or seventeen-year-old.

Between 2016 and 2021, Appellant lived with the complainant and her older sister who was Appellant's romantic partner. When the complainant was approximately twelve

2

years old, she and Appellant began engaging in playful wrestling which included tickling and pinching. The conduct continued for several years and as the complainant matured, she became uncomfortable.

In April 2019, the complainant's sister was arrested for domestic violence committed against Appellant. Trial was scheduled for September 30, 2021.[1] In May 2021, Appellant and the complainant's sister ended their relationship. Just weeks before the domestic violence trial was scheduled, the complainant, then seventeen-years-old, made an outcry that Appellant had fondled her on several occasions while wrestling.

Sergeant Gordon Eatley investigated the allegations and interviewed Appellant on two separate occasions. Appellant posited that the complainant fabricated the allegations because of the upcoming domestic violence trial against her sister. Sergeant Eatley told Appellant he believed the complainant and a jury would also. Appellant was charged and convicted of two counts of indecency with a child.

## APPLICABLE LAW

A person commits indecency with a child if, with a child younger than seventeen, whether the child is of the same age or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, the person engages in sexual contact with the child or causes the child to engage in sexual contact. TEX. PENAL CODE ANN. § 21.11(a)(1). Under the statute, "sexual contact" means the following acts if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals

---

[1] The case was resolved with pretrial diversion.

of a child or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *Id.* at § 21.11(c).

**ISSUE ONE—CHARGE ERROR**

Appellant maintains the court's charge in each case erroneously permitted conviction based on the result or circumstances surrounding the alleged conduct rather than the nature of the alleged conduct and that the error was harmful. We agree.

**APPLICABLE LAW—CHARGE ERROR**

Article 36.14 of the Texas Code of Criminal Procedure mandates that the trial court shall deliver to the jury . . . "a written charge distinctly setting forth the law applicable to the case . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.14. A charge consists of an abstract statement of the law and an application paragraph. *Ramirez v. State*, 336 S.W.3d 846, 851 (Tex. App.—Amarillo 2011, pet. ref'd). The abstract portion of a jury charge serves as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraph of the charge. *Arteaga v. State*, 521 S.W.3d 329, 338 (Tex. Crim. App. 2017). The application paragraph specifies the factual circumstances under which the jury should convict or acquit and is considered the "heart and soul" of the jury charge. *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012).

Appellate review of claimed jury-charge error involves a two-step process. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). *See also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). A reviewing court must initially determine whether charge error occurred. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If so, the next step requires the reviewing court to analyze the error for harm with

4

the standard of review for harm being dependent on whether error was preserved for appeal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Where the error was preserved by objection, any error that is not harmless constitutes reversible error. *Price*, 457 S.W.3d at 440.

## ANALYSIS

The State acknowledges that inclusion of both the result-of-conduct and nature-of-conduct paragraphs was error. A concession of error by the State is not conclusive on appeal. *See Saldano v.* State, 70 S.W.3d 873, 874 (Tex. Crim. App. 2002). *See also Estrada v. State*, 313 S.W.3d 274, 286 (Tex. Crim. App. 2010) (recognizing a reviewing court must still independently examine the error confessed). An appellate court must make an independent examination of the merits of the claim of error. *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We have independently reviewed the charge and agree it is erroneous. *See Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994) (holding a trial court errs by failing to limit the definitions of culpable mental states to the conduct element or elements of the offense to which they apply).

Defense counsel's objection preserved Appellant's jury charge issue and because of the objection, our analysis is limited to whether Appellant suffered "some" harm, i.e., error that is calculated to injure the rights of the defendant. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009), *overruled in part*, *Sandoval v. State*, 665 S.W.3d 496 (Tex. Crim. App. 2022)*.* "Some" harm means actual as opposed to theoretical harm. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (citing *Cornet v. State*,

417 S.W.3d 446, 449 (Tex. Crim. App. 2013)). In *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986), the Court acknowledged that the term "some" was left undefined in *Almanza* and expressly found that in the context of jury-charge-error analysis under *Almanza*, the presence of *any* harm, regardless of degree, which results from preserved charge error, is sufficient to require reversal of a conviction. (Emphasis in original). *See Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019) (holding same). "Cases involving preserved charging error will be affirmed only if *no* harm has occurred." *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994) (en banc).

Appellate review for "some" harm requires a determination of harm in light of (1) the entire jury charge, (2) the state of the evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Anaya v. State*, 381 S.W.3d 660, 665 (Tex. App.—Amarillo 2012, pet. ref'd) (citing *Almanza*, 686 S.W.2d at 174).

**Entire Jury Charge**

In preparing a charge, the trial court has a duty to look at the evidence in the light most favorable to the requested instruction. *Rodriguez v. State*, 629 S.W.3d 229, 233 (Tex. Crim. App. 2021). The abstract portion of the court's charge in each case instructed the jury on the full statutory definitions of the culpable mental states as follows:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a *result of conduct* when it is [her] conscious objective or desire to engage in the conduct *or cause the result.*
>
> A person acts knowingly, or with knowledge, with respect to the nature of [her] conduct or to circumstances surrounding [her] conduct or to circumstances surrounding [her] conduct when [she] is aware of the nature

6

of [her] conduct or that the circumstances exist. *A person acts knowingly, or with knowledge, with respect to a result of [her] conduct when [she] is aware that [her] conduct is reasonably certain to cause the result.*

(Emphasis in Appellant's brief). Defense counsel objected and asked that certain language pertaining to the result of conduct be removed which the trial court overruled. She also submitted a proposed charge tailoring the statutory definitions to the charged offense.[2] The trial court denied the request.

There are four culpable mental states defined in the Penal Code: intent, knowledge, recklessness, and criminal negligence. TEX. PENAL CODE ANN. § 6.03. "[T]he scope of those culpable mental states is limited by the type of offense," which depends on the "conduct element." *Campbell*, 664 S.W.3d at 245 (quoting *Cook*, 884 S.W.2d at 487). There are three conduct elements: (1) nature of conduct; (2) result of conduct; and (3) the circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989).

In a nature-of-conduct offense such as is presented here, it is the act or conduct that is punished, regardless of any result that might occur. *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). In other words, the gravamen of an indecency-with-a-child offense is the nature of the prohibited conduct, regardless of whether the accused is charged with contact or exposure. *Loving v. State*, 401 S.W.3d 642, 649 (Tex. Crim.

---

[2] Appellant's proposed charge defined the applicable culpable mental states as follows:

A person acts intentionally, or with intent, with respect to the nature of [her] conduct when it is [her] conscious objective or desire to engage in the conduct.

A person acts knowingly, or with knowledge, with respect to the nature of [her] conduct when [she] is aware of the nature of [her] conduct.

7

App. 2013). A trial court errs when it fails to limit the definitions of the culpable mental states to the conduct element of the offense to which they apply. *Price*, 457 S.W.3d at 441.

As the State acknowledges, the jury charges erroneously failed to tailor the culpable mental states to the nature-of-conduct element for indecency with a child. Although the State contends the application paragraphs cured any error, we disagree. Mental culpability is a question of fact to be determined by the jury from all the facts and circumstances in evidence. *Hemphill v. State*, 505 S.W.2d 560, 562 (Tex. Crim. App. 1974). The application paragraphs instructed the jury that indecency with a child required "intentionally or knowingly" committing the offense but omitted any reference to the nature of conduct, result of conduct, or circumstances surrounding the conduct, which were included in the abstract portion of each charge. Inconsistent instructions could have easily confused or mislead the jury thereby compounding the error. The erroneous instruction left open the possibility the jury could have relied on an inapplicable culpable mental state to convict Appellant.

The correct culpable mental state is an element of the offense the State was required to prove beyond a reasonable doubt and the erroneous charge created ambiguity on whether the State met its burden. *See Maciel v. State*, 689 S.W.3d 609, 615 (Tex. Crim. App. 2024) (disagreeing with court of appeals that failure to give a requested instruction did not result in some harm). *Cf. Campbell*, 664 S.W.3d at 245 (finding no harm from failing to tailor definition of "intentionally" to a result-of-conduct offense because the application paragraph clarified any ambiguity). Here, the application paragraphs did not offer any clarification as they erroneously included "knowingly" as a

8

culpable mental state. This factor weighs heavily in favor of a finding of actual, not theoretical, harm to Appellant.

**State of the Evidence**

Appellant's mental state was a hotly contested issue. The evidence showed she was in special education classes most of her life and had limited proficiency of the English language. Sergeant Eatley told Appellant he believed the complainant's allegations were true and that a jury would also. The video interviews show she was easily manipulated by the sergeant and eventually succumbed to his technique for extracting a confession.

The complainant testified Appellant made her uncomfortable on various occasions by touching her upper breast area over her clothes while wrestling or playing. She testified that on one occasion, Appellant pinched her breast area and caused bruising. She also testified to unwanted hugs and compliments. She denied fabricating the allegations as a motive for her sister's pending domestic violence case involving Appellant as the victim. She explained she did not outcry years earlier because she did not want to break up her family but also claimed an incident at school when she was seventeen triggered her memories of Appellant's conduct.

Appellant's older sister testified she and her siblings grew up roughhousing. She testified Appellant has difficulty expressing herself and has a habit of being very complimentary to everyone. She also indicated Appellant does not always comprehend situations with authority figures.

The State places great emphasis on Appellant's confession which it contends was buttressed by the complainant's testimony. The State's emphasis on the sufficiency of

the evidence to support Appellant's convictions is not a proper analysis in assessing harm resulting from charge error.[3] *Cornet*, 417 S.W.3d at 453 (agreeing with the appellant that "a review for sufficiency of the evidence cannot substitute for a harm analysis"). Because there is some evidence supporting the conviction, this factor weighs against a finding of harm to Appellant.

**Arguments of Counsel**

As previously noted, indecency with a child by contact is a nature-of-conduct offense. Thus, the State was required to prove Appellant acted with specific intent to arouse or gratify sexual desire and inclusion of "knowingly" was superfluous error. *Garcia v. State*, No. 10-09-00162-CR, 2010 Tex. App. LEXIS 2429, at *4–5 (Tex. App.—Waco March 31, 2010, no pet.) (mem. op., not designated for publication). The prosecutor emphasized the inapplicable culpable mental state of "knowingly" during opening and closing arguments. Doing so was a misstatement of the law. *See Chaney v. State*, 314 S.W.3d 561, 572 (Tex. App.—Amarillo 2010, pet. ref'd). In opening arguments, he told the jury the complainant was so young she was unaware Appellant's conduct was of a sexual nature. He then argued "But [Appellant] did. She *knew*." (Emphasis added). Three sentences later, he again told the jury "you're going to hear from [Appellant] that, yes, indeed she was getting sexual gratification from those things that she was doing."

In closing arguments, the prosecutor argued as follows:

Arousal and gratification. You heard it on the video. [Appellant] got off on
it . . . she liked it and she was aroused by it. Check that off your list.

---

[3] During oral argument, appellate counsel explained that he did not raise a sufficiency issue because there was some evidence which would have defeated such an issue.

10

***

> It was [Appellant] getting off on grabbing and groping and cupping the breast in a sexually arousing and gratification manner and the *only way a groomer knows how.*
>
> But make no doubt about it in your minds, make no bones about it, [Appellant] got off on it. However you want to say it; the law says it's sexual gratification and sexual arousal. She got off on every time she grabbed that breast and pulled because that's how she rolls. She understands that. Copping a feel; grabbing the breast; that's how she rolls . . . sexual gratification; sexual arousal.

(Emphasis added).

Following the defense's closing argument, the State made its final argument. The prosecutor again emphasized the culpable mental state of "knowingly." Referring to Appellant copping a feel, he argued "[Appellant] *knows* exactly what she was doing. Most predators do." (Emphasis added).

The offense required the State to prove *intent* to arouse or gratify. TEX. PENAL CODE ANN. § 21.11(c). During closing arguments, the prosecutor emphasized Appellant "getting off" or "got off" on her conduct at least three times. Such arguments highlighted the result of the conduct, not the nature of the conduct. The statute is designed to punish conduct, not the result of that conduct—sexual arousal or gratification.

The prosecutor also argued to the jurors they could convict Appellant based on the circumstances surrounding the conduct by claiming she was targeting and grooming the complainant the entire time she lived with her. Although we acknowledge it was not error for the prosecutor to argue specific intent to arouse or gratify sexual desire, an element of the offense, the prosecutor's use of any form of the word "knowledge" allowed the jury

11

to do that which the law did not—convict Appellant based on her alleged knowledge of sexual arousal or gratification rather than on the prohibited conduct—inappropriate touching. *See Chaney*, 314 S.W.3d at 568 (finding prosecutor's arguments which focused on conduct in a murder case rather than on the result—causing death—were misstatements of the law which resulted in egregious error). The arguments in the underlying case had the potential to confuse or mislead the jury given the State's burden to prove specific intent to arouse or gratify and the erroneous charge and arguments emphasizing knowledge permitted the jury to find Appellant guilty without finding she had the specific intent to arouse or gratify her sexual desire. *See Salgado v. State*, No. 11-10-00185-CR, 2012 Tex. App. LEXIS 5006, at *5 (Tex. App.—Eastland June 21, 2012, no pet.) (mem. op., not designated for publication). *See also Chaney*, 314 S.W.3d at 572.

Returning to the analogy on t-shirt sizes, is an extra-medium shirt smaller or larger than a medium? An extra-small indicates a smaller size while an extra-large refers to a larger size. The abstract portion of the charges presented a similar quandary on the culpable mental states. Did the jury rely on the nature-of-conduct instruction or the result-of-conduct instruction? The prosecutor "sold" the jury a result-of-conduct argument rather than a nature-of-conduct argument. The jury was erroneously charged and permitted to return a conviction on inapplicable culpable mental states. Such an error cannot be characterized as harmless when all that is required is *any* harm. (Emphasis added). The prosecutor's arguments weigh in favor of a finding of harm to Appellant.

12

**Any Other Relevant Information**

This factor is referred to as a "catch-all" in which we may consider any other information in the record to determine whether Appellant was harmed by charge error. *Marciel*, 689 S.W.3d at 619. The record illustrates the risk of including the full statutory definitions of the culpable mental states. The error is not uncommon, and caution must be taken to tailor the culpable mental states to the type of offense involved. The record shows defense counsel brought the error to the trial court's attention during the charge conference and proposed a correct charge. This factor weighs in favor of a finding of harm against Appellant.

The State maintains the application paragraph cured the error in the abstract paragraph. We disagree. Generally, "[w]here the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). Here, however, because error was preserved, all that is required is "some" harm which has been interpreted as "any" harm. The common and ordinary meaning of "any" is "one or some indiscriminately of whatever kind; one or another taken at random."[4] We cannot say the error of including inapplicable culpable mental states in the abstract portion of each charge was cured by their omission in the application paragraphs. The erroneous jury charge and the trial court's denial of the requested instruction on the correct culpable mental states hampered the jury's ability to properly evaluate the evidence against Appellant. Consideration of the *Almanza* factors demonstrates Appellant suffered the requisite harm required—any harm—for

---

[4] https://www.merriam-webster.com/dictionary/any.

13

reversal of her convictions. Issue one is sustained. Our disposition of issue one pretermits consideration of issues two and three.

## CONCLUSION

The trial court's judgments are reversed, and the causes are remanded to the trial court for further proceedings.

Alex Yarbrough
Justice

Publish.

14
